UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEER AMERICA, INC., | ) | CASE NO. 5:17-cv-0343 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NICHE POLYMER, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiff Steer America, Inc. ("Steer") to dismiss the second amended and supplemental counterclaim of defendant/counter-claimant Niche Polymer, LLC ("Niche"). (Doc. No. 23 ["Mot."].) Niche has filed a memorandum in opposition. (Doc. No. 24 ["Opp'n"].)[1] Steer filed no reply. For the reasons set forth herein, Steer's motion is granted in part and denied in part.

## I. BACKGROUND

A brief factual background is helpful to understanding the motion.[2] On May 13, 2014, Steer and Niche entered into a written contract under which Steer sold Niche a 50 mm Mega Twin

---

[1] In its opposition brief, Niche purports to "fully incorporate the facts, law, and arguments in its previous Memorandum in Opposition to Plaintiff's Motion to Dismiss as if fully restated herein." (Opp'n at 301 citing Doc. No. 18.) (All page number references herein are to the page identification number generated by the Court's electronic docketing system.) The Court has not referred back to any other documents. (*See* Doc. No. 6, Initial Standing Order at 37 ("[T]he Court will not consider any material that is submitted by way of incorporation of previously-filed documents.").) Courts "enjoy broad discretion in matters of pretrial management[.]" *Kimble v. Hoso*, 439 F.3d 331, 336 (6th Cir. 2006). Even the Sixth Circuit recognizes "the jigsaw puzzle problem" caused by having to piece the record together from many sources. *United States v. Kush*, 579 F.2d 394, 395 (6th Cir. 1978) (dismissing an appeal for failure, in violation of rule, to file a single, joint appendix). In view of the Initial Standing Order, which the Court can fairly presume was read by Niche's counsel, the mere fact that Niche has attempted to "incorporate by reference" does *not* render its previous arguments a part of the record for purposes of the instant motion. Those arguments, unless fully reiterated in the current opposition brief, have been effectively abandoned for purposes of the instant motion.

[2] The facts are set forth only for context. The Court is *not* making fact-findings and any fact set forth herein remains subject to the appropriate burden(s) of proof going forward.

Screw Extruder (the "Extruder") for the sum of $239,300.00. The sales contract incorporated Niche's purchase order, which, in turn, incorporated Steer's Quote #80017 dated May 8, 2014, including Steer's terms and conditions. (Doc. No. 1, Complaint ["Compl."] ¶ 6; Doc. No. 8, Answer ["Answer"] ¶ 3.) A copy of what Steer claims is the contract is attached to the complaint as Exhibit 1 (Compl. ¶ 6); but Niche asserts that the "contract regarding the Extruder was comprised of more than the documents in Exhibit 1." (Answer ¶ 3.)[3] There is no dispute that, to date, Niche has paid $159,831.74 toward the contract price. (Compl. ¶¶ 8, 12; Answer ¶ 9.)

In the second amended and supplemental counterclaim ("counterclaim") (Doc. No. 21 ["Countercl."]), Niche alleges that Steer contracted that the Extruder would be "free of material defects[]" and of "superior technology and quality[,]" but instead delivered a product that was "materially defective at the time of delivery . . . and remains materially defective to date." (*Id.* ¶¶ 5, 6, 7.) Niche further alleges that Steer "promised to stand behind its product and to service its product, and repair and replace all defective and/or inoperable parts after delivery and commission." (*Id.* ¶ 6.) Niche alleges that, despite several requests for corrective actions, "to date Steer has refused, neglected, and failed to undertake a lasting corrective action plan to deal with [the many identified problems]." (*Id.* ¶ 18.)

## II. DISCUSSION

A.  **Standard of Review on a Motion to Dismiss**

A complaint (or counterclaim) must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to

---

[3] Determining what constitutes the exact contract is not material to resolution of the instant motion.

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B. Analysis**

Niche's counterclaim is set forth in several counts: (1) breach of contract; (2) breach of warranty; (3) breach under the Uniform Commercial Code ("UCC"); (4) breach of the duty of good faith and fair dealing and unconscionability; (5) negligence; and (6) fraud in the inducement. Steer's motion seeks dismissal of every count of the counterclaim, and separately argues each one.

    1.    **Count I - Breach of Contract**

In Count I of the counterclaim, Niche alleges that Steer breached the contract in at least four ways: (1) failure to properly box and crate the Extruder for shipment as required by the

3

contract (Countercl. ¶¶ 22-23); (2) failure to deliver the Extruder with conforming U.S. standard water fittings, instead using non-conforming British fittings (*id.* ¶¶ 24-25); (3) failure to properly commission the Extruder by improperly grounding the AC drive (*id.* ¶¶ 26-27); and (4) failure to deliver an Extruder free of material defects, that is, a bona fide, working, and fully operational Extruder (*id.* ¶¶ 29-30). Niche claims that it has fully performed or, in the alternative, is excused from performance by Steer's material breach. (*Id.* ¶ 28.)

Steer argues that Niche's breach of contract claims and related damages are barred by the terms and conditions of sale.

First, Steer asserts that Niche cannot claim any breach by Steer because Niche itself has materially breached by failing to timely pay the full contract price, thus relieving Steer of its obligations. (Mot. at 251-52, citing *First Energy Sol. v. Gene B. Glick Co.*, No. 23646, 2007 WL 4554402, at *9 (Ohio Ct. App. Dec. 28, 2007) ("It is well established that a material breach by one party relieves the other of its obligation to perform under a contract.") (citations omitted).)Whether either party materially breached the contract, thus excusing the other party's performance, are matters yet to be litigated. At this juncture, on a motion to dismiss, the Court must accept as true Niche's allegations that it either fulfilled its contractual obligations or is excused by Steer's material breach. (Opp'n at 302, citing Countercl. ¶ 28; *see also* Ohio Rev. Code § 1302.91 ("The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.").) Steer's first argument for dismissal of Count I fails.

Second, Steer asserts that it is not liable under the contract for damages incurred in shipping since the contract provides that goods are shipped at the buyer's risk. (Mot. at 252.) Niche argues in opposition that this is a mischaracterization of its claim, which is not one for improper or

negligent shipping. (Opp'n at 302.) Niche alleges that, on a motion to dismiss, the Court must accept as true all of its allegations regarding the contract requirements and Steer's alleged failures to comply. Niche argues that Steer's assertion that the shipper is liable may be raised as an affirmative defense. Niche is correct, and Steer's second argument for dismissal on Count I fails.

Third, Steer asserts that any claim of breach relating to material defects in the Extruder is subject to, and barred by, the liability limitations in the contract. (Mot. at 253.) In particular, Steer asserts that Niche's sole remedy is repair and replacement (which it discusses more fully with respect to the breach of warranties claim in Count II). And fourth, Steer asserts that the special and consequential damages sought by Niche are properly limited by, and barred by, the contract. (Mot. at 253.) Niche concedes that Ohio law permits a seller to exclude certain warranties and limit contractual remedies. (Opp'n at 303, citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 638 (Ohio 1989).) But Niche argues that, "when circumstances cause an exclusive or limited remedy to fail 'its essential purpose,' the aggrieved party may seek consequential damages and incidental damages." (Opp'n at 303 (citations omitted).) "A limited or exclusive remedy can fail of its essential purpose if it deprives the purchaser of the substantial value of its bargain, leaving the purchaser without a remedy." *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 614 (N.D. Ohio 2016). This may occur when, after numerous attempts to repair, the product still does not operate free of defects, *see Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 960-61 (N.D. Ohio 1997), or when the seller is unable or unwilling to make the repairs within a reasonable time, *see Chemtrol*, 537 N.E.2d at 639. "Whether an exclusive-remedy provision in a limited warranty has failed of its essential purpose is a question of fact." *Traxler*, 158 F. Supp. 3d at 614 (citations omitted). Contrary to Steer's assertion that, beyond mere conclusory statements, "Niche has failed to plead a facially plausible claim that [Steer's] limited warranty failed its

5

essential purpose[,]" (Mot. at 254), Niche has more than sufficiently alleged that the Extruder was defective upon delivery and suffered multiple catastrophic failures after delivery (Countercl. ¶¶ 9-10); that the Extruder was inoperable for ten weeks due, in part, to gear box failures (*id.* ¶ 12); that despite replacement of the gear box on two occasions, Steer failed to repair or replace related parts that were damaged by the gear box's second failure (*id.* ¶¶ 10-12); and that the Extruder had multiple additional problems about which Niche notified Steer to no avail (*id.* ¶¶ 13-16.) On a motion to dismiss, the Court must accept these allegations as true. Therefore, Steer's third and fourth arguments for dismissal of Count I fail.

For the reasons discussed, all of Steer's arguments for dismissal of Count I fail at this juncture.

### 2. Count II - Breach of Warranty

Steer argues that it has honored all the contractual warranty obligations, which are limited to repair or replacement. (Mot. at 253-55.) It rejects Niche's assertion that the warranty has failed of its essential purpose, arguing that Niche's counterclaim states no facts in support of this assertion. Most of the arguments and counterarguments regarding contractual warranty are set forth *supra* and, as noted, fail at this juncture. The Court merely notes here Steer's additional assertion that the one-year express contractual warranty has expired and can no longer be enforced.

Niche argues in opposition (again largely in the context of the breach of contract claim) that, within the one-year time frame, it notified Steer of multiple problems with the Extruder, but despite meetings between representatives of Steer and Niche, Steer failed to repair those problems, and the Extruder remains defective. (Opp'n at 304, citing Countercl. ¶¶ 13-16, 17-18, 20, 37.) At this juncture, the Court must accept Niche's allegations as true.

Steer's argument for dismissal of Count II fails at this juncture.

6

### 3. Count III - Breach of Warranties under UCC

Steer argues that Niche's UCC claim alleging a breach of an implied warranty that the Extruder would be "fit and adequate for the purpose and use intended by Niche[,]" (Countercl. ¶ 40), is barred as a matter of law by the provision in the contract that disclaims any express or implied warranties not contained in the contract itself. Steer argues (1) that Niche's "generic allegations . . . constitute the types of labels and conclusions that are insufficient under *Iqbal* and *Twombly*[]" (Mot. at 256); and (2) that Niche's assertion that an implied warranty of merchantability was created post-contract by the parties' conduct is contrary to *Chemtrol*'s teaching that implied warranties are intended to protect consumers "not covered by contractual sales warranties." (*Id.*, quoting *Chemtrol*, 537 N.E.2d at 634.)

In opposition, Niche argues that, if it prevails on its theory that the contractual limited remedies have failed in their essential purpose, it will be entitled to seek a remedy provided by the UCC. (Opp'n at 305, citing Ohio Rev. Code § 1302.93(B).)

At this juncture, Steer's argument for dismissal of Count III fails because it has not yet been determined whether the limited contractual warranties have failed of their essential purpose.

### 4. Count IV - Breach of Duty of Good Faith/Fair Dealing; Unconscionability

Niche alleges that Steer breached its "duty to Niche to act in good faith and exercise fair dealing in its performance and enforcement of the agreement between the parties." (Countercl. ¶¶ 48, 49.) In addition, Niche alleges that certain portions of the contract are "substantively unconscionable, thereby making said provisions unenforceable." (*Id.* ¶ 50.)

Steer argues that, under Ohio law, although each contract contains a common law duty to perform the contract with care, skill, and reasonable expedience and faithfulness, this does not establish any duty independent of the contract. In other words, there is no separate cause of action

7

for breach of this duty. (Mot. at 256-57, citing *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 767 (N.D. Ohio 2013) ("Under Ohio law, each contract contains a common law duty to perform the contract with care, skill, reasonable expedience and faithfulness. But this duty only describes how a party is to perform its contractual obligations, *i.e.*, it does not establish a duty independent of the contract.") (citation and quotation marks omitted).) As to unconscionability, Steer argues that Niche has failed to allege any facts supporting such a claim, but has resorted to the labels and conclusions that are insufficient under *Twombly* and *Iqbal*, especially where, as here, both parties are commercial entities with equal bargaining power. (Mot. at 257-58.)

Steer is correct, as to any assertion of a breach of the duty of good faith and fair dealing, that there is no such independent claim under Ohio law, and Niche's very brief argument to the contrary is not convincing. In addition, Niche has abandoned any possible claim regarding unconscionability by failing to oppose Steer's motion in that regard.

Accordingly, Count IV is dismissed as an independent tort claim. The Court makes no ruling with respect to common law contractual duties of good faith and fair dealing.

5. **Count V - Negligence**

Niche alleges that Steer "was negligent in the design, manufacture, marketing, sale, boxing, creating, preparation for shipment, and commissioning of the Extruder[; and] . . . in replacing the gear boxes and in performing the other repairs and services to the Extruder after its installation." (Countercl. ¶¶ 55-56.)

Steer argues that Ohio courts have consistently held that, where duties arise out of a contract, there is no independent tort duty. (Mot. at 259, citing *Lightbody v. Rust*, No. 80927, 2003 WL 21710601, at *6 (Ohio Ct. App. July 24, 2003); *Schwartz v. Bank One, Portsmouth, N.A.*, 619 N.E.2d 10, 13 (Ohio Ct. App. 1992).)

In opposition, Niche "concedes that the contract assigns certain duties and obligations to Steer, and those duties are governed by the terms of the contract and applicable law[,]" (Opp'n at 306), but further argues, without supporting case law, that "the range of duties Steer owes to Niche that are governed by the contract remains to be litigated, and any breached non-contractual duties support Niche's claim of negligence." (*Id.*)

As noted in *Schwartz*, *supra*, "[i]f a petition states a cause of action in contract, the nature of the action is not changed by the mere fact that there is also contained therein a charge of tortious conduct." 619 N.E.2d at 12. The mere fact that Niche alleges that Steer performed its various contractual duties negligently does not create a duty independent of the contract. "'It is not a tort to breach a contract, no matter how willful or malicious the breach.'" *Lightbody*, 2003 WL 21710601, at *6 (quoting *Salvation Army v. Blue Cross & Blue Shield of N. Ohio*, 636 N.E.2d 399, 403 (Ohio Ct. App. 1993)).

Steer is entitled to dismissal of the negligence claim in Count V of the counterclaim.

6. **Count VI - Fraud in the Inducement**

Niche alleges that, at a meeting on December 11, 2015, "Steer acknowledged it was aware of a gear box design problem." (Countercl. ¶ 59.) Therefore, it "acted in utter disregard of the truth when it entered into the contract with Niche." (*Id.* ¶ 60.) Niche alleges that Steer misrepresented the "technological innovations" of the gear box, which is "an essential component of the Extruder and material to the contract." (*Id.* ¶¶ 61-62.) Niche claims it reasonably relied upon Steer's representations and has been damaged. (*Id.* ¶¶ 63-64.)

Steer argues that Niche's attempt to create a fraud in the inducement claim from language in the technical description for the gear box of the Extruder fails because courts recognize that a seller will always have a favorable opinion of its own product and, since this cannot be reasonably

9

relied upon by a buyer as anything more than puffery, such favorable opinion does not provide an independent basis for a fraud claim. (Mot. at 260, citing *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 725 (N.D. Ohio 2009).)

Niche does not appear to offer any argument in opposition with respect to this claim. Therefore, the Court considers the claim abandoned.

Steer is entitled to dismissal of Count VI of the counterclaim.

### III. CONCLUSION

For the reasons set forth herein, the motion to dismiss (Doc. No. 23) filed by plaintiff Steer America, Inc. with respect to defendant Niche Polymer, LLC's second amended and supplemental counterclaim is granted in part and denied in part. Counts IV, V, and VI of the counterclaim are dismissed.

**IT IS SO ORDERED**.

Dated: August 21, 2018

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**